Charlotte KADUSHIN, Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Albert F. Moncure, Marvin Weiss, Alfred T. Robertson, Thomas A. Duff and Murray Mahl, Defendants.

No. CV 83–0535.

United States District Court, E.D. New York.

March 5, 1985.

Eleanor Jackson Piel, New York City, for plaintiff.

Patrick J. Falvey by James Begley, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action primarily for employment discrimination. In the Second Cause of Action, however, plaintiff contends that she was illegally discharged by defendant Port Authority without a hearing, in violation of the Due Process Clause of the Fourteenth Amendment. Both sides have moved for partial summary judgment with respect to the Second Cause of Action.

### I. FACTS

In July 1967 defendant hired plaintiff as a buyer. In July 1968 plaintiff became a permanent employee. On January 11, 1982 plaintiff's supervisor sent a memorandum to defendant's Executive Director, recommending that plaintiff be dismissed. On January 26, 1982 defendant's Assistant Personnel Director sent plaintiff a letter stating that (1) plaintiff's supervisor had recommended that plaintiff be dismissed because of poor attendance, lack of punctuality, poor performance, and insubordination, and that (2) "you may, within fourteen days from the date hereof, request an appearance before a department head. You may appear in person or by an authorized representative and, after receiving the explanation for the recommended action, may make a written or oral statement." On March 19, 1982 plaintiff and her attorney

met with defendant's comptroller to discuss the matter. On April 20, 1982 plaintiff responded in writing to the charge. On May 13, 1982 defendant's Executive Director dismissed plaintiff. At no time was plaintiff given an opportunity to call witnesses.

At the time plaintiff was hired, there was in effect a document known as "General Resolution 76" which had been adopted by the defendant Port Authority in 1941. The resolution provided that a permanent employee may not be discharged "except for good and sufficient reason", and may be discharged "only after a hearing under such rules and regulations of The Port of New York Authority as may then be in effect." At the time plaintiff was hired she received a booklet titled "Guide for Port Authority Personnel." The Guide stated, at page 13, that "an employee who has worked continuously for the Port Authority for at least 12 months shall not be removed from his position for as long as the Port Authority has need for the work he does, except for good and sufficient cause, and only after a hearing." The Guide also stated, at page 2: "In times to come, some of the policies and procedures described in the following pages may be changed to fit new situations. The basic idea behind them, however, will never change ... fair treatment for everyone, and fitting recognition for meritorious service." There was also in effect at the time plaintiff was hired a document known as "General Circular No. 67", which had been issued by the Executive Director in 1942 and revised in 1946. The document provided, in Part I, § 6A, that disciplinary actions against professional and managerial employees would be governed by Part V. Part V provided for a hearing before the employee's Department Head, with the employee having the right to make a statement, and for an appeal to the Executive Director, with the employee having the right to make a statement to the Executive Director.

On February 13, 1969, the Port Authority modified General Resolution 76, by providing that professional and managerial employees "may be removed by the Executive Director with the approval of the Chairman of the Committee on Operations, for any cause or reason under procedures established by the Executive Director and filed with the Committee on Operations." At the same time, the Executive Director adopted a new procedure for the discharge of professional and managerial employees, which (with minor modifications) is still in effect and is incorporated in Port Authority Instruction 20–1.11. The procedure currently provides that a discharge proceeding is initiated by a memorandum written by the employee's *own* Department Head. The employee may request an interview with a *different* Department Head designated by the Executive Director. Such different Department Head then reports to the Executive Director, who makes the decision whether to discharge the employee.

The Port Authority, it should be noted, was created pursuant to a compact between New York and New Jersey.

## II. DISCUSSION

Plaintiff contends that the relevant tenure regulations gave plaintiff a vested property interest in her job, and that her discharge without a full-scale evidentiary hearing constituted a taking of property without due process and an impairment of contract.

### A. *The* Arnett *Case*

The case most directly on point is *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).[1] In that case plaintiff, a federal employee, was administratively charged with having libeled his superior. Statutory and regulatory provisions provided that plaintiff could not be discharged without cause, that plaintiff was entitled to a pre-termination opportunity to rebut any charges by submitting affi-

---

**1.** Although that case dealt with the Due Process Clause of the Fifth Amendment, its reasoning is equally applicable to the instant case involving the Due Process Clause of the Fourteenth Amendment and the Contracts Clause of Article I, § 10 of the Constitution.

davits to the superior, and that plaintiff was entitled to a post-termination evidentiary trial-type hearing. Plaintiff failed to request a pre-termination opportunity to rebut the charges, and was discharged by the superior. A three-judge District Court held that plaintiff was entitled to a pre-termination hearing before an impartial tribunal with a right to present witnesses. The Supreme Court reversed and remanded. Justice Rehnquist, in a plurality opinion joined in by Chief Justice Burger and Justice Stewart, stated that although plaintiff had a statutorily created property interest in his job, such interest was entirely subject to statutorily created procedures, which permitted discharge without a full-scale evidentiary pre-termination hearing before an impartial tribunal. Justice Rehnquist apparently regarded the right to a post-termination evidentiary hearing as being relevant only insofar as such right was necessary to protect an employee against damage to his reputation, and apparently thought that no such right would be constitutionally required in the absence of potential damage to reputation. Justice Powell, in a concurring opinion joined by Justice Blackmun, contended that once a substantive property interest has been created, the Constitution rather than a statute determines what minimum of procedure is needed to extinguish such right. Justice Powell found that the Constitution did not require a pre-termination evidentiary hearing before an impartial tribunal under the facts of the case, but apparently believed that a post-termination evidentiary hearing before an impartial tribunal was essential. Justice White, concurring in part and dissenting in part, stated that a post-termination evidentiary hearing was essential, although he noted that a different rule might apply where an employee is discharged for "reasons of pure inefficiency" rather than "specific charges of misconduct." Justice White further stated that while it was permissible that a pre-termination hearing be without witnesses, serious constitutional difficulties would arise if a statute were interpreted as permitting a pre-termination hearing without an impartial hearing examiner.

### B. Existence of Substantive Property Right

■ In the instant case, the first issue is whether plaintiff had a substantive property interest in her job. We hold that she did. At the time plaintiff became a permanent employee in July 1968, General Resolution 76 (as reflected in the Guide) unequivocally provided that plaintiff could be discharged only for good and sufficient cause, and only after a hearing. We hold that these provisions were sufficient to create a substantive property right under New York law. *See Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). Although it is true that the Resolution and Guide contemplated the possibility of changes concerning hearing procedure, no suggestion was made that the right to continued employment in the absence of just cause for discharge was itself subject to abolition.[2]

■ Since state law gave plaintiff a substantive property interest in her job, the Due Process Clause of the Fourteenth Amendment prohibited the defendant state agency from depriving plaintiff of her job without due process. *Arnett v. Kennedy, supra.* The question remains, however, as to what process was "due" and as to what source should be looked to on this point.

### C. Adequacy Of Pre-Termination Procedures and Standards

Let us leave aside for the moment the question of whether plaintiff was entitled to a post-termination evidentiary hearing before her discharge could become final.

---

**2.** In *Williams v. Port Authority*, 584 F.2d 974 (2nd Cir.1978), the Court stated that "[s]ince the Port Authority's internal regulations permitted managerial employees like appellant to be dismissed for any reason, appellant cannot claim any protectible right in an expectation of job retention." Given that the Court did not have before it the issue of the significance of General Resolution 76 and the Guide, and given that that opinion was not published, that opinion is not dispositive of the instant case.

Let us first determine whether plaintiff received all the *pre*-termination process to which she was constitutionally entitled.

In *Arnett*, six justices agreed that the Due Process Clause does not require a pre-termination evidentiary hearing. We therefore hold that the instant pre-termination hearing was not invalid on the ground that plaintiff was not allowed to present witnesses.

In *Arnett*, five justices agreed that the Due Process Clause does not require that a pre-termination hearing be conducted by an impartial examiner. In the instant case, unlike in *Arnett*, there is no self-evident reason to doubt the impartiality of the pre-termination hearing official. However, we will assume for the sake of argument that the pre-termination hearing was not conducted by an impartial official. We hold that the pre-termination hearing did not violate due process on this ground.

In *Arnett*, three justices implied that a pre-termination hearing comports with the Due Process Clause if conducted under procedures established by the same legal provisions creating the underlying substantive right. The justices presumably meant not only that due process *does not* require procedures *superior* to those provided by the legal provision creating the underlying substantive right, but also that due process *does* require procedures *not inferior* to those provided by the legal provision creating the underlying substantive right. As will be shown below, it is unnecessary for us to decide whether we agree with this reasoning in order to determine the validity of the instant pre-termination hearing.

■ In the instant case, the Port Authority on February 13, 1969 (subsequent to plaintiff becoming a permanent employee) modified General Resolution 76 by providing that certain employees "may be removed ... for any cause or reason", whereas previously such employees could not be discharged "except for good and sufficient reason". This was not a mere change in procedure, but a change in the substantive standard for discharge of employees. If an employee had acquired rights under the old substantive standard and was subsequently discharged as a result of the adoption of the new, inferior substantive standard, such discharge would constitute a violation of *substantive* due process. This is so quite independently of whether the reasoning of the three-justice plurality opinion in *Arnett* concerning *procedural* due process is correct. We find, however, that plaintiff's discharge did not result from the adoption of the new, inferior substantive standard. Plaintiff was accused of poor attendance, lack of punctuality, poor performance, and insubordination. These charges, if true, would surely constitute "good and sufficient reason" for discharge. Consequently, plaintiff's discharge was not caused by the adoption of the new, inferior substantive standard, and did not violate *substantive* due process.

■ The question remains, however, of whether the change in procedures from those authorized by General Circular No. 67 at the time plaintiff became a permanent employee to those authorized by Port Authority Instruction 20.1–11 at the time of the pre-termination hearing violated plaintiff's right to procedural due process. The new procedures provided that the pre-termination hearing would be conducted not by an employee's *own* Department Head but rather by a *different* Department Head, and also abolished the right to make a separate statement to the Executive Director. The first change is a change in *favor* of an employee. Instead of requiring that the pre-termination hearing be conducted by an employee's *own* Department Head (who might well be biased against such employee), the new procedures require the hearing to be conducted by another Department Head designated by the Executive Director, and thus increase the chance that the hearing will be conducted by an impartial official. The other change, the loss of the right to make a separate statement to the Executive Director, does not appear to us to represent a significant loss on the part of an employee, as the first change in our view largely removed the rationale for a *de novo* review by a second

official. Certainly the combined effect of the two changes did not produce a net loss for employees. Consequently, it is unnecessary to determine the validity of the reasoning of the three-justice plurality opinion in *Arnett* in order to note that the pre-termination hearing in the instant case met the standards of that opinion.

For the above reasons, we conclude that the pre-termination hearing in the instant case was consistent with the Due Process Clause of the Fourteenth Amendment and the Contracts Clause of Article I, § 10 of the Constitution.

### D. *Post-Termination Hearing*

The question remains as to whether defendant should have provided plaintiff with a post-termination evidentiary hearing before an impartial tribunal.

■ If we were to follow the reasoning of Justice Rehnquist's plurality opinion in *Arnett, supra,* that the government in depriving a person of a substantive right need provide only such procedures as were guaranteed in the legislation creating the underlying substantive right, we would find that plaintiff is not entitled to a post-termination hearing. However, in *Vitek v. Jones,* 445 U.S. 480, 490–491, 100 S.Ct. 1254, 1262–1263, 63 L.Ed.2d 552 (1980) the Court rejected this reasoning and held that, under the Due Process Clause of the Fourteenth Amendment, once the state creates a substantive property or liberty right the state cannot deprive a person of such right without meeting certain minimal procedural requirements set by federal constitutional law rather than by state law. Although this holding was not the sole basis for the decision (since the Court held that the plaintiff possessed a substantive liberty interest created by federal constitutional law as well as one created by state law), Justice Rehnquist himself has now apparently adopted this holding. *Santosky v. Kramer,* 455 U.S. 745, 775 n. 3, 102 S.Ct. 1388, 1406 n. 3, 71 L.Ed.2d 599 (Rehnquist, J., dissenting) (1982). We therefore hold that where, as here, the state has created a substantive property or liberty interest, the state cannot deprive a person of such interest without meeting certain minimum procedural requirements set by the Due Process Clause of the Fourteenth Amendment rather than by state law.

■ The Supreme Court has explained that due process ordinarily requires an opportunity to confront and cross-examine adverse witnesses, and an impartial decisionmaker. *Goldberg v. Kelly,* 397 U.S. 254, 269–271, 90 S.Ct. 1011, 1021–1022, 25 L.Ed.2d 287 (1970). In the instant case, although (as we have held) defendant was not required to supply plaintiff with a *pre-termination* evidentiary hearing, defendant was required to supply plaintiff with (at the least) a *post-termination* evidentiary hearing before an impartial tribunal. Consequently, without definitively resolving the question of whether the pre-termination non-evidentiary hearing was conducted by an impartial official, we note that defendant did not supply plaintiff with any evidentiary hearing whatsoever, before or after the termination, and hold that defendant has therefore deprived plaintiff of property without due process, in violation of the Due Process Clause of the Fourteenth Amendment.

The question remains as to what remedy plaintiff is entitled to. Possible remedies include money damages, an injunction requiring a post-termination evidentiary hearing before an impartial tribunal, or a combination of both. We need not determine the remedy at the present time. Determination of the form and scope of the remedy can await trial.

### III. CONCLUSION

Plaintiff is granted partial summary judgment with respect to the Second Cause of Action. The Clerk shall not enter judgment at this time, as determination of the remaining Causes of Action and of the remedy for the Second Cause of Action must await trial.

SO ORDERED.